### STATE, BUREAU OF UNEMPLOYMENT COMPENSATION, Plaintiff, v. LOWE, Defendant.

Municipal Court, Cleveland.

No. 259639. Decided May 24, 1954.

C. William O'Neill, Atty. Genl., Columbus, Clarence E. McLeod, Cleveland, for plaintiff.

Robert D. Mishne, Cleveland, for defendant.

## OPINION

By JACKSON, J.

This cause came on to be heard on the petition, answer, reply, agreed stipulation of facts and briefs.

The plaintiff's petition contains two causes of action, separately stated because they involve different periods of time and different amounts. The first cause of action is concerned with the following periods. July 1, 1948 to September 30, 1948; October 1, 1948 to December 31, 1948; October 1, 1949 to December 31, 1949; October 1, 1950 to December 31, 1950; January 1, 1951 to March 31, 1951. The second cause of action is concerned with the period April 1, 1951 to September 30, 1952.

It is the claim of the plaintiff that during the periods referred to the defendant Bobbie B. Lowe was an employer subject to the Unemployment Compensation Act of Ohio, §§1345-1 to 1345-5 GC, §4141.01 et seq. R. C., that the administrator of the Bureau of Unemployment Compensation made a finding against said employer on the amount of contributions, interest and penalty due from her for said periods, notified defendant of the amount thereof and ordered the same paid, all pursuant to the above referred to sections of the Revised Code of Ohio. It is further claimed by the plaintiff not having paid said amounts within ten days after notice thereof that the findings were certified to the Attorney General of Ohio. It is the claim of the plaintiff that on the first cause of action it is due $50.61 plus interest and on the second cause of action $92.41 plus interest.

The defendant in its answer denied that the defendant was an employer subject to the Unemployment Compensation Act referred to above and denied that the defendant was indebted to the plaintiff in any sum.

By written stipulation the following facts were agreed to:

1. During all times material herein, the defendant rented a store at 7804 Quincy Avenue, Cleveland, Ohio and paid monthly rent therefor.

2. Defendant bought and equipped said store with six spaces. Each space consisted of a beauty chair, an operator's stool, a shampoo bowl, dresserette and a sterilizer.

3. The defendant operated a beauty business to her own customers in one of the spaces, and during all times material herein, possessed a manager's license issued by the State Board of Cosmetology.

4. The defendant rented out the other spaces to various lessees at various times material herein as per the Schedule A attached hereto and made a part hereof, which shows the times, the lessees and the nature of the licenses issued to such lessees by the State Board of Cosmetology. All leases were oral and on a week-to-week basis.

5. Defendant-lessor charged and received $5.00 per week for a space when rented. Each lessee had her own customers, promoted her own

trade, was restricted solely to the particular space rented, and was not allowed to use other spaces. There were no facilities used in common. Each defendant-lessee made her own appointmnts, set her own prices, collected her own money. Each defendant lessee set her own hours and days and never reported on coming or leaving. There was no set time for opening or closing. Each defendant-lessee kept her own books and records and never reported her earnings to the defendant-lessor. Each lessee supplied her own lotions, shampoos, pins, dryers, combs, cutters, perfumes and whatever other equipment, tools or supplies were needed by such lessee. There was no cashier or receptionist in the store.

Light, heat, gas, water and one telephone were supplied for the store by the defendant-lessor. Defendant-lessor cleaned the floor space only.

6. The arrangements were the same with each lessee. Defendant-lessor has entered into such arrangements with lessees since the opening and equipping of the store in December of 1946.

The arrangement was made with each lessee at the particular time when the lessee entered the store and began operations.

The issue in this case is whether the defendant ever had three employees within the meaning of the Unemployment Compensation Act. If found subject to the act judgment is to be rendered in the amount prayed for in the plaintiff's petition.

In determining the primary question above stated it is necessary to make two inquiries.

1. Does the rule of the Iden case (**State of Ohio v. Iden, 71 Oh Ap 65, 25 O. O. 404** [Muskingum Co., 1942]) apply to the facts herein?

2. If the Iden case does not apply to these facts, does the State Cosmetology Law (§§1082-1 to 1083-1, inclusive, GC, §§4713.01 to 4713.99 R. C.) require an interpretation that the defendant was an employer?

Do the facts herein come within the interpretation of the Iden case?

**Sec. 1345-1-c GC (§4141.01 R. C.)**, defines the term employment as follows: "* * * Service performed for wages under contract of hire, written or oral, express or implied * * *." Services are defined as "* * * Performed by an individual for remuneration shall be deemed to be employment subject to the Unemployment Compensation Act unless and until it is shown to the satisfaction of the administrator that:

1. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact, and

2. Such service is outside the usual course of business for such service as performed, and

3. Such individual is customarily engaged in an independently established trade, occupation, profession or business."

In the Iden case the pertinent proven facts were as follows:

"From the year 1932 to September of 1938, appellee, R. V. Iden, owned and operated a beauty parlor in Zanesville. During this period he employed from eight to twelve operators, who worked and were paid upon a commission basis. From 1936, the effective date of the act,

to April 1, 1938, Iden contributed to the unemployment compensation fund. As of September 1, 1938, Iden entered into like separate written lease agreement with each of his erstwhile employees; whereby he leased to each a certain numbered booth for a term of two years. Each operator was to pay as rent a certain percent of her gross weekly income at the end of each week. A specified amount was to be paid appellee out of certain priced permanents. In addition to the booth all equipment was to be furnished by the lessor and its use leased to the operators. Iden agreed to furnish all heat, light, gas, water, telephone and janitor services and supplies. Lessees were to procure and pay for all required licenses. It was covenanted that either party to a lease might terminate it on 15 days' notice, and if a lessee defaulted in any covenant, the lessor might resume possession.

"The evidence establishes that Iden was the only one who had a shop license as required by Ohio law. Some of the operators had operator's licenses, some had manager's licenses; most did not. The law requires that every manager of a shop must have such a license. Iden had a representative present at all times who took care of the desk telephone and cash register. When calls for appointments came in, this representative assigned the customer's time and work to the operator requested. If requests were not made the representative assigned whichever operator she chose to do the service. All work slips and money were taken to the representative; sometimes by the operator, but generally by the customer. The moneys were deposited by Iden and his representatives in the name of Iden Beauty Parlor. At the end of each week the amount due each operator was computed and paid to her. The work hours were from 9 a. m. to 6 p. m. Operators generally gave notice of time of departure and return.

"The operators were not confined to their particular booths. There was a special facial booth. There was a special place provided for giving shampoos, and a special place for giving permanents. These three places were used by all operators. As noted, Iden furnished all equipment, lotions and supplies, except some operators had their own combs and manicure sets. There was practically little difference in the management and operation of the beauty parlor after the leases were entered into, except that perhaps the operators had more freedom of movement. They received a percentage of the price of work done as they had in the past. All advertising was done by Iden in the name of the Iden Beauty Parlor. The operators were not named. The prices charged for work done was practically uniform. When charge accounts were made, Iden's representative passed upon them, and if accepted, were assumed by Iden, and the operators paid whether the account was collected or not."

It is evidenced that the lease plan was proposed by Iden to relieve himself of social security, workmen's compensation, unemployment compensation, and minimum wage requirements and contributions that are prescribed under the various professions of the respective acts.

Among other things the court said, "any one who labors for another and is compensated by his employer for so doing is an employee and is in employment. The court found that Iden had not established either: 1. That the operator was free from control or direction over the per-

formance of such services, both under his contract of service and in fact. 2. That his operator's services were "outside the usual course of business for which such service is performed" or that his operators were "customarily engaged in independently established trade, occupation, profession or business." The effect of this decision was to declare that one cannot by subterfuge evade the requirements of the law for the protection of "employees" or "employment."

The facts in the instant case are entirely different. The defendant maintained no control over the lessees nor over their customers appointments, prices nor money taken in, neither did she control their hours of working. She set no time for opening nor closing. Each lessee kept her own books and records and furnished her own supplies. The rule in the Iden case does not apply. Here there is no evidence of an attempt to resort to a subterfuge.

2. What is the effect of the State Cosmetology Law, §§1082-1 to 1083-1 inclusive, GC, and §§4713.01 to 4713.99, inclusive R. C. The State Cosmetology Law provides that beauty parlors shall be in charge of and immediately under the supervision of a licensed managing cosmetologist. A manager or manufacturing cosmetologist is defined as a person who has or has had direct supervision over "operators." The act further defines an operator as a person practicing cosmetology and is not a manager.

It is the claim of plaintiff that inasmuch as it is against public policy as set forth in the statute for a mere operator to work alone that those "operators" who leased from the defendant were necessarily employees and that even those individuals who had manager's licenses not having obtained a shop license could only be employees. It is plaintiff's contention that since the individuals who were operating under a lease arrangement with the defendant had not complied with the State Cosmetology Law by obtaining a shop license and complying with the provisions thereof they were necessarily employees.

With this contention the court does not agree. The mere fact that the lessee violated the provisions of the State Cosmetology Law did not make the employees, either in law or in fact. While it would appear that there had been some laxity on the part of the Enforcement Division under the Cosmetology Law in supervising this beauty shop there are ample provisions under the law for protecting the health of the public.

It is therefore the considered judgment of this court that the defendant was not an employer within the purview of the State Unemployment Compensation Act, that the decision in the Iden case does not apply nor do the provisions of the State Cosmetology Act justify any other decision than that the defendant is not liable under pleadings and facts herein. Judgment is hereby rendered in favor of the defendant.